

FILED

NOV - 1 2010

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

In re                                   )       Case No. 10-16784-B-13
                                        )
Jose Guadalupe Denis and                )       DC No. MHM-1
Ignacia Denis,                          )
                                        )
            Debtors.                    )
_____)

**MEMORANDUM DECISION REGARDING TRUSTEE'S
OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN**

Deanna Hazelton, Esq., appeared on behalf of Michael H. Meyer, Esq., chapter 13 trustee.

D. Max Gardner, Esq., appeared on behalf of the debtors, Jose Guadalupe Denis and Ignacia Denis.

Before the court is an objection by the chapter 13 trustee, Michael H. Meyer, Esq. (the "Trustee"), to confirmation of the chapter 13 plan (the "Plan") filed by Jose and Ignacia Denis' (the "Debtors"). The Plan will pay nothing to the unsecured creditors. The Plan only provides for the payment of administrative expenses and for the stripping of two wholly unsecured mortgages from the Debtors' residence. The Trustee contends that the Plan does not satisfy the "good faith" requirement of 11 U.S.C. subsections 1325(a)(3) & (7) (the "Objection"). The Plan appears to satisfy the elements for confirmation in all respects except the Trustee's challenge to good faith. For the reasons set forth below, the Objection will be overruled and the Plan will be confirmed.

This memorandum decision contains the court's findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a), made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 7052.

41

The court has jurisdiction over this matter under 28 U.S.C. § 1334, 11 U.S.C.
§ 1325[1] and General Orders 182 and 330 of the U.S. District Court for the Eastern
District of California. This is a core proceeding as defined in 28 U.S.C.
§§ 157(b)(2)(A) & (L).

**Background and Findings of Fact.**

 The Debtors have not been in bankruptcy within the last eight years and
therefore appear to be eligible for a discharge in either chapter 7 or chapter 13.
Based on their disposable income, the Debtors cannot pay anything to their
unsecured creditors, but they chose to seek relief under chapter 13 because they
need to value, and eventually strip, the junior mortgages on their residence pursuant
to the authority of *In re Lam*, 211 B.R. 36 (9th Cir. BAP 1997) and *In re Zimmer*,
313 F.3d 1220 (9th Cir. 2002). Their petition was filed on June 17, 2010.

 With the petition, the Debtors filed their Plan together with all required
documents and schedules. The Debtors' combined income, stated in Form 22C to
be $48,325.44, is less than the median income for their household size. The
Debtors' residence, valued at $178,000, is encumbered by a first mortgage in the
amount of $199,654.35. The payments on the first mortgage are current. The
residence is also encumbered by second and third mortgages in the amounts of
$20,000 and $35,000, respectively. The Debtors' two automobiles, a 1991 Lincoln
and a 1996 Ford, are unencumbered and have a combined fair market value of
$2,500. The schedules show no other secured claims or priority obligations. The
general unsecured liabilities, composed almost entirely of credit card debt, total
$33,412. All of the Debtors' personal property, valued at $ 9,067.40, is scheduled
as exempt. Their five children ranged in ages from 5 years to 18 years. Prior to the

---

[3]Unless otherwise indicated, all bankruptcy, chapter, code section and rule
references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of
Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated *after* October 17,
2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection
Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23.

bankruptcy, the Debtors had both been employed and had been with their employers for several years. Mrs. Denis lost her job during the same month the petition was filed. The Debtors' schedule I shows total net monthly income in the amount of $4,100.24. Schedule J lists expenses in the amount of $4,073.46, including the first mortgage payment of $705, leaving a disposable income of $26.78.

The Debtors' Plan provides for monthly payments to the Trustee of $65 for a term of 36 months. The Debtors will continue to pay the first mortgage on their residence outside of the Plan. The Plan proposes to treat as wholly unsecured the second and third mortgages.[2] With the addition of the unsecured mortgages, the total unsecured debt in the schedules is $88,412, of which 0% will be paid under the Plan.[3] Through the Plan, the Debtors will pay the balance of their attorney's fees in the amount of $1,800 as well as $540 to the Trustee as an administrative expense.

**Issues Presented.**

The Trustee contends that a chapter 13 petition, and the corresponding plan which pays the Debtors' attorney's fees and values the wholly unsecured mortgages for the purpose of stripping the liens, but which pays nothing to any secured or unsecured creditors, cannot satisfy the "good faith" requirement of subsections 1325(a)(3) and (7). He argues that this case is just a "disguised chapter 7" which abuses the bankruptcy system, because lien stripping is not available in chapter 7.

At the conclusion of the hearing, the parties waived the right to an evidentiary hearing on the "good faith" issue. The court set a briefing schedule for the filing of supplemental evidence and took the matter under submission. The Debtors filed a declaration explaining their financial circumstances and the reasons they need to be in chapter 13. The Trustee offered nothing in rebuttal to the

---

[2]The holders of those mortgages have already entered stipulations to that effect. The stipulations were approved by this court on July 28, 2010.

[3]The amount of unsecured claims listed in the Debtors' Plan is $110,066.84. This is inconsistent with their schedules D and F.

3

1  Debtors' testimony and relies solely upon the terms of the Plan to support his
2  Objection.

3  **Analysis and Conclusions of Law.**

4     **The "Good Faith" Test.** Pursuant to § 1325(a)(3), a debtor cannot confirm
5  a chapter 13 plan which is not filed in good faith. In addition, a debtor cannot
6  confirm a plan unless the bankruptcy petition is filed in good faith. §1325(a)(7).
7  When a debtor files a chapter 13 petition, or seeks to convert from chapter 7 to
8  chapter 13, "good faith" is essentially an element of a debtor's qualification to be in
9  chapter 13. *See Marrama v. Citizens Bank of Massachusetts (In re Marrama)*, 549
10 U.S. 365, 373 (2007). The debtor has the burden of proving each element of
11 confirmation by a preponderance of the evidence. *U.S. v. Arnold and Baker Farms*
12 *(In re Arnold and Baker Farms)*, 177 B.R. 648, 654 (9th Cir. BAP 1994) (judg't
13 aff'd 85 F.3d 1415 (9th CA 1996), *cert. denied* 519 U.S. 1054 (1997).) However,
14 under the authority of Rule 3015(f), the court does not have to make a good faith
15 inquiry and take evidence on the issue unless a *prima facie* objection is filed. *See In*
16 *re Lavilla*, 425 B.R. 572, 580 (Bankr. E.D. Cal. 2010).

17    The Bankruptcy Code does not define "good faith." The court must consider
18 the totality of the circumstances when making the "good faith" determination.
19 *Goeb v. Heid (In re Goeb)*, 675 F.2d 1386, 1391 (9th Cir. 1982) (a chapter 13 plan
20 which only pays 1% to unsecured creditors is confirmable if otherwise filed in good
21 faith). The mere fact that a debtor is paying little or nothing to his or her unsecured
22 creditors does not constitute a *per se* lack of good faith. Although this fact is
23 relevant, the court must inquire whether the debtor has acted equitably in proposing
24 a plan. *Id.* at 1390. "A bankruptcy court must inquire whether the debtor has
25 misrepresented facts in his plan, unfairly manipulated the Bankruptcy Code, or
26 otherwise proposed his Chapter 13 plan in an inequitable manner. Though it may
27 consider the substantiality of the proposed repayment, the court must make its good-
28 faith determination in the light of *all* militating factors." *Id.* (emphasis in original).

4

1    The good faith requirements under subsections 1325(a)(3) (good faith plan)

2    and 1325(a)(7) (good faith bankruptcy petition) are closely related and are

3    frequently based on the same factors. As the court explained in *In re March*, 83

4    B.R. 270, 275 (Bankr. E.D. Pa. 1988):

> [T]here is a requirement that a bankruptcy be filed in good faith which
> is separate and apart from the requirement that a chapter 13 plan be
> proposed in good faith. *Matter of Madison Hotel Associates,* 749 F.2d
> 410 (7th Cir. 1984). *See also e.g., In re Kinney,* 51 B.R. 840 (Bankr.
> C.D. Cal. 1985) (tenth bankruptcy in just over two years was filed
> solely to prevent foreclosure by virtue of the automatic stay and was
> not filed in good faith). In the case at bench, Savin's objections appear
> to be addressed, at least in part, at the debtor's good faith in filing
> rather than at good faith in proposing the plan. Frequently, in the
> chapter 13 context there will be an overlap between the two good-faith
> inquiries because the debtor's plan must be filed within a very short
> time after the case is commenced. Bankr. Rule 3015.

*Id.* (footnote omitted).

This court has previously ruled, in an unpublished opinion involving

essentially the same objection on different facts, that a five-year chapter 13 plan,

which paid only the attorney with nothing to the unsecured creditors until the third

year of the plan, was *not* filed in good faith. *In re Gonzalez*, No. 08-15277, 2008

WL 5068837 (Bankr. E.D. Cal. Nov. 25, 2008).[4] The key distinction between this

case and the *Gonzalez* case was the fact that Mr. Gonzalez was not eligible for

either a chapter 7 or a chapter 13 discharge at the time he filed his petition. Looking

at the totality of the circumstances, this court found that Mr. Gonzalez was misusing

---

[4]In *Gonzalez*, the debtor's plan provided for a payment of $125 per month, for a total
of $7,500 being paid over the stated 60 month term of the plan. Approximately 10%,
or $750, would have been retained by the trustee as an administrative expense. An
additional $2,600 would have been paid to the debtor's attorney at the rate of $113 per month
for 23 months. That left approximately $4,100 for distribution to the unsecured creditors'
claims which totaled over $21,000. If the debtor completed the plan, he would pay less than
20% of his unsecured debt and those payments would not have started until the 24th month
of the plan. At the conclusion of the five years, the debtor would have still owed the balance
of the unsecured debt.

5

the bankruptcy system because he was simply stalling his creditors until he would be eligible for a chapter 13 discharge in a new case. The analysis was summarized as follows:

> It does not appear from the schedules, or the Plan, that there is any reorganization in progress here. Indeed, *the relief which the Debtor needs, a discharge of his unsecured debts, is unavailable to the Debtor at this time through any chapter of the Bankruptcy Code* because he received a chapter 7 discharge in a case filed less than four years before this case. §§ 727(a)(8) and 1328(f)(1). Therein lies the reason why this bankruptcy case appears to be an abuse of the bankruptcy system. The Plan will stay any enforcement action by the creditors whose claims cannot be discharged in this case, yet will pay nothing to those creditors for up to two years (all Plan payments during that time will go to the Trustee and Debtor's counsel). Before the Debtor has to make any payments to unsecured creditors in this case, he will be in a position to dismiss this case and re-file a new chapter 13 which proposes to pay nothing to the unsecured creditors for another two years and sets the Debtor up for a discharge after the third year. The Debtor here is trying to effectuate an "end run" around the express restrictions of § 1328(f)(1).

*In re Gonzalez* at *2 (emphasis added).

In *Gonzalez*, the court was able to identify specific factors, extrinsic to the plan itself, which, when considered in the totality of the circumstances, led the court to conclude that the debtor "proposed his Chapter 13 Plan in an inequitable manner." *In re Goeb*, 675 F.2d at 1390.

Based on facts similar to the present case, this court recently overruled a "good faith" objection by the Trustee and confirmed the plan in another unpublished opinion, *In re De Rua*, No. 09-17529 (Bankr. E.D. Cal. Oct. 14, 2009), *available at* http://www.caeb.uscourts.gov/pdf. The critical distinction between *De Rua* and *Gonzalez* was the fact that Ms. De Rua *was* eligible for a chapter 13 discharge.[5] In

---

[5] In *De Rua*, the debtor's only sources of income were $872 per month she received as the "caregiver" of a disabled child and the $870 Supplemental Security Income payment she received on his behalf. All of the debtor's assets were exempt, and her mortgage was current. The plan proposed to pay $40 per month, the full amount of her disposable income, to the chapter 13 trustee for 36 months, the full term required by the Bankruptcy Code. All of the plan payments would go to pay the Trustee and the debtor's attorney's fees.

6

1    *De Rua*, the court declined to set a *per se* "bad faith" rule: that a chapter 13 plan,

2    which pays only the attorney's fees for a debtor who is then ineligible for a chapter

3    7 discharge, cannot satisfy the "good faith" confirmation test.

4         **The "Disguised Chapter 7" Dilemma.**  The Trustee argues that this case is

5    just a "disguised chapter 7" which does not belong in chapter 13.  The Trustee made

6    the same argument in *In re Lavilla*, 425 B.R. 572.  There, the Trustee argued that

7    the plan, which only paid 4.7% to the unsecured creditors, was not filed in good

8    faith because the debtors *were not* eligible for a chapter 7 discharge.  In this case,

9    however, the Trustee contends the Plan, which will pay little or nothing to the

10    unsecured creditors, was not filed in good faith because the Debtors *are eligible* for

11    a chapter 7 discharge.  In *In re Lavilla,* this court allowed the debtors to confirm

12    their chapter 13 plan and pursue the "discharge" they could not get in chapter 7

13    because in chapter 13 they were willing to submit to the oversight of the Trustee and

14    their creditors for the term of the plan.  In the case at hand, the Debtors are seeking

15    to divest their residence of two wholly unsecured mortgages which they

16    understandably cannot pay in their current financial situation.  That relief is also

17    unavailable in a chapter 7.  In both cases, the Trustee argues that the combination of

18    circumstances constitutes a lack of good faith because the debtors are receiving the

19    benefits of a chapter 13, while only committing to the burdens (payment of little or

20    nothing to unsecured creditors) of a chapter 7.  Notably, the Trustee objects to

21    confirmation of the Plan, but he offers no suggestions as to what modifications to

22    the Plan would satisfy the "good faith" test on these facts.

23         In support of his Objection, the Trustee relies upon the "good faith" analysis

24    in a number of decisions from other circuits, including *In re Paley*, 390 B.R. 53

25    (Bankr. N.D.N.Y. 2008).[6]  In the recent case *In re Molina*, 420 B.R. 825 (Bankr.

26

27         [6]The court has already distinguished *Paley* in previous decisions, see *In re Lavilla*,

28    425 B.R. at 578-79.

D.N.M. 2009), the court confirmed a chapter 13 plan under a set of circumstances similar to this case. There, the trustee argued, citing *In re Paley* and *In re Sanchez*, No. 13-09-10955, 2009 WL 2913224 (Bankr. D.N.M. May 19, 2009), that the debtor's plan failed the "good faith" test as a matter of law solely because she was ineligible for a chapter 7 discharge and was paying nothing through the chapter 13 except a portion of her administrative expenses. The trustee suggested that "good faith" under those circumstances should be a legal test, not a factual one. The *Molina* court declined the trustee's invitation to define a "*per se* bad faith" rule for chapter 13 debtors who could not get a chapter 7 discharge. The *Molina* court noted that "good faith" is not a legal test; it cannot be defined to exclude certain debtors based on their eligibility, or lack thereof, for a chapter 7 discharge. "Good faith" is a factual determination that must be made on a case-by-case basis. "However exactly good faith is defined, it would seem to be measured at least in part by the attitude and actions of the debtor." *Id.* at 830.

The Trustee has not moved to dismiss this case based on the perceived lack of good faith.[7] He has only objected to confirmation of the Plan. Yet, the policy behind "good faith" is the same whether raised in an objection to confirmation of a chapter 13 plan or in a motion to dismiss the case, *In re Griffith*, 203 B.R. 422, 424 (Bankr. N.D. Ohio 1996), and the factors to be considered are essentially the same, *In re Huerta*, 137 B.R. 356, 367 (Bankr. C.D. Cal. 1992). Since the Trustee has not requested dismissal of the case, the court can infer that the Trustee is not really opposed to these Debtors being in chapter 13 and receiving a chapter 13 discharge. The Trustee just objects to the contents of the Plan, specifically the fact that the Plan only pays administrative expenses, specifically the attorney's remaining fee and the

---

[7]Bad faith in the filing of a petition is "cause" for dismissal under § 1307(c); *Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1224 (9th Cir. 1999).

8

Trustee's fee.[8] The Trustee, however, has not cited a single case from this Circuit or this Circuit's Bankruptcy Appellate Panel to support his argument, nor has he alleged that the Debtors have engaged in any of the kinds of conduct which are typically found in the lack-of-good-faith cases in this Circuit.

**"Good Faith" in the Ninth Circuit**. For whatever reason, the legislature has never defined the "good faith" which is requisite for filing a chapter 13 petition and confirmation of a plan. Therefore, courts have had to make that determination and there is a plethora of authority in the Ninth Circuit for doing so.

During the years since *Goeb* was decided in 1982, the Ninth Circuit and its Bankruptcy Appellate Panel have identified numerous factors which may be relevant to the "good faith" inquiry. Viewed as a whole, those cases share a common thread–evidence of facts which are extrinsic to the plan and specific to the debtor and which suggest conduct inconsistent with the notion of "good faith." These cases include: *Matter of Gregory*, 705 F.2d 1118, n.4 (9th Cir. 1983) (debtor proposed to completely discharge, in a six-month plan, a debt which arose from an embezzlement conviction); *In re Chinichian*, 784 F.2d 1440 (9th Cir. 1986) (multiple filings, misrepresentation of assets, and a bankruptcy petition filed on the eve of trial); *In re Silberkraus*, 336 F.3d 864, 870 (9th Cir. 2003) (petition filed on the eve of trial in order to thwart a state court action where the debtor had sufficient assets to pay all claims); *In re Bisso*, 225 F.3d 661 (9th Cir. 2000) (unpublished) (petition filed on eve of trial to stay litigation and a history of bankruptcy filings and dismissals); *In re Castello*, 123 B.R. 466 (9th Cir. BAP 1991) (plan proposing to

---

[8]The Trustee asserts that the Plan length is tied to the attorney's fees, as in *Paley*. However, the Debtors are required to file a 36 month plan and it appears that they have simply amortized the attorney's fees to match the length of the plan. The term of this Plan is not tied simply to the payment of attorney's fees. Unlike the circumstances in *Paley*, the Trustee has not shown that these Debtors have the ability to make a more substantial distribution to their unsecured creditors.

9

pay criminal restitution claim in full but pay nothing to the victim of the debtor's criminal act); *In re Pacana*, 125 B.R. 19 (9th Cir. BAP 1991) (plan that would pay less on a domestic support obligation than was ordered by the state court.); *In re Tucker*, 989 F.2d 328 (9th Cir. 1993) (debtors lied to the levying officer and misrepresented their possession of funds, then used those funds to reduce the debt on their homestead immediately before filing a chapter 13 petition); *In re Eisen*, 14 F.3d 469 (9th Cir. 1994) (multiple chapter 13 filings to stop enforcement action and concealment of assets); *In re Morimoto*, 171 B.R. 85 (9th Cir. BAP 1994); *In re Larue*, 1996 WL 16955; *Waits v. U.S.*, 1996 WL 226043 (9th Cir. BAP 1996) (tax claims not provided for in the plans because debtors were tax protestors); *In re Leavitt*, 209 B.R. 935 (9th Cir. BAP 1997) *aff'd by In re Leavitt*, 171 F.3d 1219 (9th Cir. 1999) (deceit and fraud by debtor; plan paid nothing to the defrauded partner but paid for two new cars and for piano lessons); *Chan v. Secured Creditor Allied Banking Corp.*, 243 F.3d 547 (9th Cir. 2000) (multiple filings and bad check written to the trustee); *In re Nelson*, 34 Fed.Appx. 65 (9th Cir. 2009) (multiple filings and plan seeking to discharge $1.3 million in claims from fifty defrauded employees).

In each of these cases the courts were able to determine, based on facts extrinsic to the terms of the chapter 13 plans, that the plans or petitions had not been filed in "good faith." As set forth below, in this case the Trustee has not offered any facts extrinsic to the Debtors' Plan to suggest that the Debtors have acted inequitably, violated any laws, or offended the traditional notion of "good faith."

**Application of the Facts to the Good Faith Test.** Based on their schedules, these Debtors do not have any disposable income to distribute to the unsecured creditors after payment of the administrative expenses, the attorney's and Trustee's fees. Nevertheless, the Trustee has raised a *prima facie* objection to the Debtors' good faith which shifts to the Debtors the affirmative burden to produce evidence to show their good faith. Faced with the Objection, the court cannot simply review the

10

schedules and find that the Plan was filed in good faith. "Where there is an objection [to good faith], more than bare presentation of the plan and provision for payment thereunder is requisite." In *Fidelity & Casualty Company of New York v. Warren (In re Warren)*, 89 B.R. 91 (9th Cir. BAP 1988). The court must inquire whether the Debtors "acted inequitably in proposing their chapter 13 plan." *In re Goeb*, 675 F.2d at 1390. That determination cannot be made without evidence. The court can only consider the "totality of the circumstances" if it has evidence of what those circumstances are.

In response to the Trustee's Objection, the Debtors submitted a declaration explaining their financial situation and the reasons they seek relief in chapter 13. The Debtors are married and have lived in their home with their children for eight years. The home is encumbered by three mortgages, the purchase money mortgage from CitiFinancial Services, which they have kept current and will continue to pay outside of the chapter 13 Plan, and two junior mortgages for subsequent loans. The second mortgage was obtained in 2005 or 2006 in order to buy the equipment Mr. Denis needed to work as a self-employed truck driver. The Debtors believed this to be a good business decision based on their experience; however, the sudden increase in the price of fuel led to financial difficulties. The third mortgage was obtained to remedy mold problems which required substantial repairs to their home. Those creditors were served with the Plan and knew that the Plan was not proposing to pay anything on account of their unsecured claims and do not object to the Debtors' proposal to value the home for the purpose of eventually stripping the junior mortgages. An order approving their stipulation has already been entered in the case valuing those claims at zero for treatment under the Plan.

The Debtors filed for bankruptcy protection because of the effects of the economy on their income. Mrs. Denis lost her job in June 2010 and is seeking new employment. The Debtors have become established in the community and need to

11

1    keep the home for their children. The Debtors would be willing to pay more to their

2    creditors if they had a higher income. They are willing to submit tax returns to the

3    Trustee each year or inform him if their salary increases. The Debtors' Plan

4    satisfies subsections 1325(b)(1)(B) & (b)(4), they are below-median-income-debtors

5    who are only required to make payments for 36 months. The Debtors have no

6    nonexempt assets so they do not have to pay anything to their unsecured creditors to

7    satisfy the "chapter 7 best interest" test under subsection 1325(a)(4). There is no

8    evidence to suggest that they have the "ability to pay" more than they are proposing

9    in the Plan. The Ninth Circuit recognized long ago, for a debtor with very little

10   disposable income, that "good faith" under subsection 1325(a)(3) does not require a

11   substantial repayment to unsecured creditors. *In re Goeb*, 675 F.2d 1386. Based on

12   the court's review of the record, consideration of the Debtors' testimony, and the

13   absence of any rebuttal or request for an evidentiary hearing by the Trustee, the

14   court is persuaded that the "good faith" test has been satisfied in this case. While

15   the amount the Debtors propose to pay to unsecured creditors may be relevant, the

16   court must consider all of the "militating circumstances," not just a select few.[9]

17

18       [9] See *In re Selden*, 116 B.R. 232, 234-35 (Bankr. D. Or. 1990), where the bankruptcy

19   court's reasoning seems even more convincing post BAPCPA:

20       *In re Goeb*, 675 F.2d 1386, 1390 (9th Cir. 1982) instructs that while a court "may
         consider the substantiality of the proposed repayment, the court must make its
21       good-faith determination in the light of all militating factors." Many courts have
         seized upon this and similar language to inquire into the percentage to be paid and
22       the nature of the debts to be discharged in determining good faith. See, e.g., In re
         Warren, 89 B.R. 87 (9th Cir. BAP 1988).
23
             This court believes that the scope of the above-cited statement in Goeb has
24       been narrowed by subsequent Congressional action, and the amount of the
         proposed repayment and length of the plan are no longer factors which are
25       properly considered in determining good faith.
                             ********************
26
27   Congress has effectively legislated regarding the type of debts which may be
     discharged, the amount which must be repaid creditors and the length of a plan.
28

                                          12

1    The Trustee gives great weight to the fact that the Debtors are only in chapter
2    13 because they cannot value and strip the wholly unsecured mortgages in chapter 7.
3    *Dewsnup v. Timm*, 502 U.S. 410 (1992). However, he has not offered any authority
4    which defines this as a misuse of the Bankruptcy Code. The Debtors' Plan does not
5    propose anything which is not allowed under the Code. There is no authority in the
6    Bankruptcy Code or this Circuit for adding an additional financial burden to chapter
7    13 debtors just because they are seeking relief not available in chapter 7. The
8    Trustee offers no evidence or reason to suggest that the Debtors have
9    "misrepresented facts in his plan, unfairly manipulated the Bankruptcy Code, or
10   otherwise proposed his Chapter 13 plan in an inequitable manner." *In re Goeb*, 675
11   F.2d at 1390.

12       The central purpose of the Bankruptcy Code is to "provide a procedure by
13   which certain insolvent debtors can reorder their affairs, make peace with their
14   creditors, and enjoy 'a new opportunity in life with a clear field for future effort,
15   unhampered by the pressure and discouragement of preexisting debt.'" *Grogan v.
16   Garner*, 498 U.S. 279, 286-87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (internal
17   quotations omitted). However, this relief is only available to the "honest but
18   unfortunate debtor." *Id.* at 287, 111 S.Ct. 654. The Debtors here appear to fall
19   squarely within the definition of "honest but unfortunate." Once the beneficiaries of
20   the American dream as self-employed business owners, as a consequence of the
21   current economy they have experienced a series of economic difficulties, none of

23   Section 1328(a) sets forth what debts are excluded from discharge. Section
24   1325(b) specifies the method of determining the amount which must be paid to
     unsecured creditors, and the minimum length of payment. As to those questions,
25   Congress has preempted the field. Courts are not free to judicially overrule the
26   acts of Congress under the guise of an inquiry into "good faith." Those who
     disagree with the Acts of Congress should appeal to their legislators rather than
27   the courts." *Id.*, footnote omitted.

13

1   which appear to be their fault.  They are trying to act in the best interests of their
2   family and it appears they did not resort to bankruptcy until Mrs. Denis'
3   employment situation became critical. The Debtors appear to pay their taxes and
4   maintain a modest lifestyle.  Indeed, the Debtors' circumstances are not unlike those
5   of many chapter 13 debtors whose plans are approved by this court without
6   objection from the Trustee.[10]

7          Once their Plan is confirmed, the Debtors cannot reduce the payments or
8   shorten the 36-month term of the Plan without modifying the Plan.  If they try to
9   modify the Plan, they must again prove that the proposed modification satisfies the
10  "good faith" requirements of § 1325(a). *Fridley v. Forsythe (In re Fridley)*, 380
11  B.R. 538 (9th Cir. BAP 2007).  The Trustee argues that this is just a disguised
12  chapter 7 because the Debtors are not paying anything on the unsecured claims, yet
13  they are seeking relief–the stripping of wholly unsecured mortgages–which is
14  absolutely prohibited in chapter 7.  That might be true if the Debtors were simply
15  proposing to confirm the Plan, strip the mortgages, and get their discharge.  The key
16  factor which distinguishes this case from a chapter 7 is the fact that the Debtors are
17  submitting themselves and their disposable income to the jurisdiction of the
18  bankruptcy court for three years.  At any time the Trustee may review the Debtors'
19  financial situation and revisit their "ability to pay."  If their financial situation
20  improves significantly, then the Trustee may move to modify the Plan accordingly.
21  § 1329(a)(1); *see Maney v. Kagenveama (In re Kagenveama)*, 541 F.3d 868, 877 (9th
22  Cir. 2008).  This factor alone constitutes a significant burden to the Debtors that
23  would not be present in chapter 7.

24  _____

25          [10]Ironically, if the Debtors had not maintained the payments on their first mortgage, or
26  had a delinquent car loan, and had an arrearage to pay through the chapter 13 plan, the court
    does not believe the Trustee would have objected.  This court frequently confirms chapter 13
27  plans, without objection from the Trustee, which seek to strip junior mortgages from the
28  debtors' residences while paying only a few secured claims.

14

On the surface, this Plan does not overtly offend any established principle of bankruptcy law.  The Trustee has not pointed to any fact extrinsic to the Plan that offends the notion of good faith.  The Trustee argues that there is no reorganization in progress here, but if the Trustee truly believes that confirmation of a chapter 13 plan on these facts constitutes an abuse of the Bankruptcy Code, then he should have moved to dismiss the case or to convert it to chapter 7, not simply objected to confirmation of the Plan with no proposal for a solution to the perceived problem.[11]  The Trustee argues that he is not asking the court to make a *per se* rule here but the relief he seeks, a blanket denial of confirmation based solely on the terms of the Plan, would have that effect.

**Conclusion.**

The Trustee's Objection is based on the fact that the Debtors filed their petition under chapter 13, instead of chapter 7, and proposed a Plan which will only pay administrative expenses while taking advantage of the right to value and strip two wholly unsecured mortgages from the residence.  Based on the foregoing the court is persuaded, by the evidence, the weight of case authority, and the totality of the circumstances, that the Debtors filed their petition and their Plan in good faith.  Accordingly, the Trustee's Objection to confirmation of the Plan pursuant to subsections 1325(a)(3) & (7) will be overruled.  The Debtors' Plan will be confirmed.  The Debtors shall submit a proposed order consistent with this ruling.

Dated: November ____/____, 2010

W. Richard Lee
United States Bankruptcy Judge

_____

[11]The Trustee contends that the Debtors cannot propose a meaningful chapter 13 plan and that the case should be converted to chapter 7 (see Trustee's Objection 6:21-24, August 17, 2010), but the Trustee does not request that relief.  Conversion of this case to chapter 7 would have no practical affect except it would probably result in loss of the Debtors' home.

Jose Guadalupe Denis & Ignacia Denis, Case No. 10-16784-B-13/DC No. MHM-1

Jose Guadalupe Denis
Ignacia Denis
189 Munzer St.
Shafter, CA 93263

D. Max Gardner, Esq.
Attorney at Law
1800 30th St., 4th Fl.
Bakersfield, CA 93301-5298

Michael H. Meyer, Esq.
Chapter 13 Trustee
P.O. Box 28950
Fresno, CA 93729-8950

Office of the U.S. Trustee
United States Courthouse
2500 Tulare Street, Suite 1401
Fresno, CA 93721

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA**

**CERTIFICATE OF MAILING**

     **The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that a copy of the document to which this certificate is attached was mailed today to the following entities at the addresses shown below or on the attached list.**

Jose Guadalupe Denis
Ignacia Denis
189 Munzer St
Shafter CA  93263

D. Max Gardner, Esq.
Attorney at Law
1800 30th St 4th Fl
Bakersfield CA  93301-5298

Michael H. Meyer, Esq.
Chapter 13 Trustee
PO Box 28950
Fresno CA  93729-8950

Office of the U.S. Trustee
United States Courthouse
2500 Tulare St #1401
Fresno CA  93721

**DATED:** 11/02/10

**By:** _____
Deputy Clerk

**EDC 3-070 (Rev. 6/28/10)**